IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CNX GAS COMPANY LLC<br>    Plaintiff | ) )<br>)<br>) | Civil Action No. _____ |
| v. | )<br>)<br>) | JURY TRIAL DEMANDED<br><br>FILED ELECTRONICALLY |
| WELL CONTROL<br>TECHNOLOGIES, INC.<br>    Defendant | )<br>)<br>) | |

## COMPLAINT

Plaintiff, CNX Gas Company LLC ("CNX"), through its undersigned counsel, alleges the following in its Complaint against Defendant, Well Control Technologies, Inc. ("WCT").

## PRELIMINARY STATEMENT

1.      CONSOL Energy Inc. ("CONSOL"), headquartered in Canonsburg, PA, employs approximately 2400 people and is one of the leading energy producers in the United States, having large reserves of bituminous coal and natural gas.  CONSOL has been in business since 1864 and has developed a reputation for excellence and integrity.  For example, in 2010, CONSOL was named by Forbes magazine as one of the "100 Most Trustworthy Companies."  CNX, the Plaintiff in this action, is one of CONSOL's wholly owned subsidiaries and is responsible for CONSOL's natural gas operations.

2.      Around 2008, CNX invested resources into studying and improving natural gas production.  This led to the discovery of two significant inventions: (i) a down-hole liquid level controller; and (ii) a well management system, (collectively, "the CNX Technology").  CNX filed numerous patent applications around the world to protect the CNX Technology.

1

3. CNX installed a prototype of the down-hole liquid level controller in one of its wells. The prototype and associated productivity of the well utilizing the new technology performed even better than expected and confirmed that CNX had developed technology that could significantly improve the efficiency of gas production. In 2013, three U.S. patents issued on the down-hole liquid level controller. Around that time, CNX sought licensees to commercialize the CNX Technology. CNX wanted to commercialize the CNX Technology in order to: (i) make the CNX Technology available to the industry as a whole, thereby benefiting the entire industry; (ii) make natural gas production more efficient, thereby decreasing the cost to consumers; (iii) receive an appropriate return on its investment in developing the CNX Technology; and (iv) ensure further development of the CNX Technology.

4. Also, in 2013, CNX conceived of certain trade secret and confidential information regarding potential modifications and improvements to the down-hole liquid level controller and the prototype. These improvements were confidentially disclosed to Tom Tompkins at Key IP. Mr. Tompkins became the CEO of WCT when it was incorporated.

5. WCT incorporated in 2014 and was a potential licensee of the CNX Technology. Even though it was a newly formed start-up entity, WCT assured CNX that it had the ability and resources to successfully commercialize the CNX Technology. During discussions between WCT and CONSOL, WCT insisted on receiving a provisional assignment of the CNX Technology rather than a license. From time to time when confidential information needed to be disclosed, CNX made sure WCT agreed to keep it confidential prior to disclosing it. Based on WCT's promises and assurances, CNX entered into an agreement with WCT which provisionally assigned the CNX Technology to WCT. That agreement was entered into on April 16, 2014 ("Agreement"). The Agreement required WCT to commercialize the CNX Technology, generate

minimum revenues and make certain royalty payments by set dates, all in order to protect CNX's investment and to ensure that the CNX Technology was successfully introduced in a timely fashion.

6. WCT was not able to commercialize the CNX Technology and never achieved the sales necessary to generate the minimum revenue requirements in the Agreement. WCT failed to uphold its commitments under the Agreement, despite CNX's ample support which included, among other things: (i) purchasing the products; (ii) testing the modifications and improvements; (iii) providing technical support from the inventor of the CNX Technology (a CONSOL employee); (iv) allowing WCT to use CONSOL and its name as a reference in its marketing materials; and (v) assisting WCT's legal counsel during prosecution of the patents.

7. As a result of WCT's failures, and under the terms of the Agreement, the CNX Technology automatically reverted to CNX. The automatic reversion of the CNX Technology included "all improvements and modifications" made to the CNX Technology.

8. CNX is now, again, the owner of the CNX Technology, and of all improvements and modifications, including those developed before and during the period the CNX Technology had been provisionally assigned to WCT under the Agreement.

## PARTIES

9. Plaintiff CNX is a Virginia Limited Liability Company with a principal place of business at 1000 CONSOL Energy Drive, Canonsburg, Pennsylvania 15317.

10. Defendant WCT is a Pennsylvania Corporation with a principal place of business at 310 Grant Street, Suite 823, Pittsburgh, Pennsylvania 15219.

## JURISDICTION

11. This is an action for: (i) patent infringement under 35 U.S.C. § 271; (ii) misappropriation of trade secrets pursuant to the Defense of Trade Secret Act of 2016, 18 U.S.C. §§ 1836, *et seq.* as amended by the Defense of Trade Secrets Act of 2016; (iii) misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 through 12 Pa. C.S. § 5308; (iv) breach of contract under Pennsylvania law;  (v) unjust enrichment under Pennsylvania law; and (vi) specific performance.

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

13. This Court has personal jurisdiction over WCT because WCT is a Pennsylvania corporation that resides in this district.  In addition, WCT agreed to personal jurisdiction in this District.

**VENUE**

14. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).  WCT resides in this district and a substantial part of the events and transactions occurred in this district.  In addition, WCT agreed to personal jurisdiction in this district.

**THE AGREEMENT**

15. A true and correct copy of the Agreement is attached hereto as Exhibit 1 and incorporated by reference, as if the same were set forth in full herein.

16. Pursuant to the Agreement, CNX provisionally assigned the CNX Technology (including various intellectual property rights and patents) to WCT in exchange for an initial payment and future payments to be made according to a royalty schedule.  *See* Exhibit 1 at Article 3.

17.     Pursuant to Article 4 of the Agreement, WCT was required to secure at least $1,000,000 in total net sales in 2014 and 2015 combined, by December 31, 2015, or make a further payment of $250,000 on January 15, 2016.  *See* Exhibit 1 at Section 4.01.

18.     The Agreement provided that if the payment of $250,000 was not made by WCT by January 15, 2016, then all rights to the CNX Technology assigned by CNX to WCT would revert back to CNX by automatic assignment, and all rights in improvements or modifications to the technology would be owned by CNX.  *See* Exhibit 1 at Section 4.01.

19.     WCT failed to secure the required total net sales of $1,000,000 in 2014 and 2015 combined, by December 31, 2015, and refused to pay the $250,000 due to CNX on January 15, 2016.  *See* Article 9 of Exhibit 1.

20.     The parties agreed to extend the January 15, 2016 deadline for payment to February 15, 2016 in an attempt to negotiate amendments to the Agreement; however, no amendments were made to the Agreement and no further payments were made to CNX by WCT pursuant to the Agreement.

21.     As a result, under the terms of the Agreement, all of the property rights to the CNX Technology granted to WCT in the Agreement automatically reverted back to CNX and have been reassigned to CNX from WCT.  This is not in dispute.

22.     As required under the terms of the Agreement, CNX executed the Reverting Assignment on May 26, 2016.  *See* Exhibit 2 attached hereto.

## COUNT I
## PATENT INFRINGEMENT

23.     CNX incorporates by reference Paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24.     CNX is the owner of United States Patent No. 8,235,111 (the "'111 Patent"), entitled, "Down-hole liquid level control for hydrocarbon wells." A true and correct copy of the '111 Patent is attached hereto as Exhibit 3.

25.     The '111 Patent covers the CNX Technology, i.e., a down-hole liquid level controller that measures the liquid level of a well using a float that controls a pump.

26.     WCT has offered for sale a product incorporating the CNX Technology, i.e., a down-hole liquid level controller that measures the liquid level of a well using a float that controls a pump.

27.     Upon information and belief, WCT is still offering for sale a product incorporating the CNX Technology, i.e., down-hole liquid level controller that measures the liquid level of a well using a float that controls a pump. *See* Exhibit 4 attached hereto.

28.     Upon information and belief, the liquid level controller offered for sale by WCT incorporates the CNX Technology and infringes the '111 Patent.

## COUNT II
## FEDERAL DEFENSE OF TRADE
## SECRETS ACT (18 U.S.C. § 1836 as Amended)

29.     CNX incorporates by reference Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.     CNX has well sites that are located in Pennsylvania and Virginia. The products embodying the CNX Technology have been used or are intended to be used in both Pennsylvania and Virginia. Therefore, the products embodying the CNX Technology have been used in interstate commerce or are intended to be used in interstate commerce.

31.     WCT has used CNX's confidential and proprietary information to create modifications or improvements to CNX's liquid level controller. Both Timothy Bedard and Joe

Silvaggio of WCT have admitted that there are trade secrets ("CNX Trade Secrets") incorporated into a down-hole liquid level controller, and that WCT knows those CNX Trade Secrets are the property of CNX.

32.     When WCT used CNX's proprietary information to develop the CNX Trade Secrets, WCT knew the information was protected and that WCT had a duty to maintain the secrecy of the CNX Trade Secrets.

33.     Paragraph 4.01 of the Agreement states, "[a]ny rights created in improvements or modifications will be rights owned by CNX upon the automatic assignment." The CNX Trade Secrets are improvements and/or modifications to the liquid level controller and therefore owned by CNX. WCT derived those improvements and/or modifications from CNX's proprietary information.

34.     Upon information and belief, WCT is willfully and improperly using the CNX Trade Secrets and intends to disclose and use the CNX Trade Secrets for its own financial benefit. WCT has provided no justification for this use and knows or should know that the CNX Trade Secrets are CNX's property.

35.     Upon information and belief, WCT confidentially filed a provisional patent application disclosing the CNX Trade Secrets, U.S. Provisional Patent Application Serial No. 62/333,609, without permission and without disclosing it to CNX. Upon information and belief, WCT is using the CNX Trade Secret information to prepare and file non-provisional patent applications.

36.     Upon information and belief, WCT intends to disclose and use the CNX Trade Secrets to obtain investors that will encumber title to the CNX Trade Secrets. Use and disclosure of the CNX Trade Secrets will irreparably harm CNX and destroy the CNX Trade Secrets.

37. CNX has not expressly or impliedly consented to WCT's use or disclosure of the CNX Trade Secrets in any way.

38. Paragraph 12.01 of the Agreement expressly excludes any limitation of liability for WCT's acts of misappropriation of the CNX Trade Secrets after the reversion.

39. WCT is aware that it is under a duty not to use the CNX Trade Secrets now that the reversion has taken place and has full liability for such use.

40. WCT has misappropriated CNX Trade Secrets that include, but are not limited to, trade secrets embodied in technical drawings, specifications, prototypes, improvements, enhancements, and a provisional patent application.

41. CNX has demanded the return of the CNX Trade Secrets, and WCT has failed and refused without any appropriate basis to do so.

**COUNT III**
**PENNSYLVANIA UNIFORM TRADE SECRETS ACT (12 Pa.C.S. § 5302 *et seq*.)**

42. CNX incorporates by reference Paragraphs 1 through 41 of this Complaint, as if fully set forth herein.

43. Upon information and belief, WCT is improperly using the CNX Trade Secrets to produce a down-hole liquid level controller and to apply for patents upon the same. Upon information and belief, WCT is disclosing the CNX Trade Secret information to obtain funds to commercialize a down-hole liquid level controller that incorporates the CNX Trade Secrets. Use and disclosure of the CNX Trade Secrets will irreparably harm CNX and destroy the CNX Trade Secrets.

44. WCT is aware that it does not have CNX's consent to use the CNX Trade Secrets.

45. WCT possessed the CNX Trade Secrets pursuant to a relationship that under the circumstances give rise to a duty to maintain their secrecy and that limited their use.

46. WCT's misappropriation of the CNX Trade Secrets is willful and malicious, as demonstrated through WCT's communications with CNX and WCT's complete disregard for the obligations set forth in the Agreement.

## COUNT IV – BREACH OF CONTRACT

47. CNX incorporates by reference Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. WCT breached the Agreement by failing to pay $250,000 to CNX by February 15, 2016, which is the agreed upon extension of the January 15, 2016 deadline that is set forth in the Agreement.

49. On May 26, 2016, CNX served WCT with a formal notice of breach and demanded that WCT cease use of all of the CNX Technology subject to the Agreement and requested that WCT: (i) immediately return to CNX all equipment, technical drawings and specifications relating to the CNX Technology; (ii) sign, upon request, any documents required by CNX to memorialize the automatic reversion and transfer of the property to CNX; and (iii) remit to CNX any unpaid royalties that are due or past due on units sold, along with an accounting of the units sold.  A true and correct copy of the demand letter is attached hereto as Exhibit 5.

50. Thereafter, on May 27, 2016, CNX requested that WCT transfer all files related to the CNX Technology and all improvements or modifications, as required by the Agreement.  At the time the Agreement was signed, a reverting assignment was included as part of the Agreement that listed the property that was in existence at that time and was provisionally assigned to WCT.  WCT authorized CNX to sign the reverting assignment.  CNX also provided WCT with a copy of the reverting assignment that was recorded in the United States Patent and

Trademark Office by CNX.  A true and correct copy of this correspondence is attached hereto as Exhibit 6.

51.     On May 31, 2016, WCT, through its counsel, agreed to produce files for those patents in the reverting assignment but neglected to include any files for the improvements or modifications, notably any files relating to U.S. Provisional Patent Application Serial No. 62/333,609.  A true and correct copy of this correspondence is attached hereto as Exhibit 7.

52.     On June 2, 2016, in order to protect its valuable property rights, CNX again requested that WCT comply with its obligations under the Agreement by having an officer or authorized agent of WCT sign and date the Assignment, by forwarding all files including, but not limited to, the files relating to U.S. Provisional Patent Application Serial No. 62/333,609, and by providing all documentation showing or describing all improvements and modifications to CNX's liquid level controller and/or well management system.  A true and correct copy of this correspondence is attached hereto as Exhibit 8.

53.     WCT refused to sign the Assignment, as requested by CNX, and has indicated that it will not provide CNX with files relating to U.S. Provisional Patent Application Serial Number 62/333,609.  A true and correct copy of correspondence dated June 3, 2016 from counsel for WCT is attached hereto as Exhibit 9.

54.     WCT has breached the Agreement by asserting rights to the modifications and improvements when the Agreement expressly states that the modifications and improvements remain property of CNX and by failing to provide CNX with the modifications and improvements that it has made to the CNX Technology, as set forth in the Agreement.

55.     WCT has breached the Agreement by refusing to sign additional assignments needed to memorialize the transfer of title to the improvements and modifications.

56. CNX has been damaged and will continue to be damaged as the result of WCT's breaches, wrongful assertion of rights to the improvements and modifications and failure to meet its obligations pursuant to the Agreement.

## COUNT V – UNJUST ENRICHMENT

57. CNX incorporates by reference Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. CNX has involuntarily conferred a benefit on WCT of which WCT has knowledge. CNX has conferred the CNX Trade Secrets on WCT. WCT has knowledge of the CNX Trade Secrets.

59. WCT is retaining and taking the benefit conferred upon WCT without providing any compensation to CNX for the same.

60. The circumstances are such that it would be inequitable for WCT to retain the benefit of the use of the CNX Trade Secrets and the CNX Technology.

## COUNT VI – SPECIFIC PERFORMANCE

61. CNX incorporates by reference Paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62. WCT is required under the Agreement to sign any documents necessary to memorialize the reversion of the CNX Technology to CNX.

63. WCT has refused to memorialize the assignment of improvements and modifications.

64. Specifically, WCT has refused to memorialize the assignment of U.S. Provisional Patent Application Serial No. 62/333,609. *See* Exhibit 9.

65. WCT is in a position to either let the provisional application expire or expose the contents of the application. Given that scenario, any legal remedy would be inadequate.

66. Upon information and belief, WCT has intentionally refused to sign a memorialization of the transfer of improvements and modifications in an attempt to cloud the title to CNX's property and to return the documents, prototypes, and any other instruments that embody the CNX Technology to CNX.

67. Wherefore, CNX requests the Court to order specific performance as required by the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CNX prays as to counts I-VI:

A. The Court declare that WCT has breached and continues to be in breach of the Agreement;

B. The Court declare that CNX has clear title to all improvements and/or modifications to the CNX Technology;

C. The Court declare that U.S. Provisional Patent Application Serial No. 62/333,609 is owned by CNX;

D. The Court order WCT to sign an assignment transferring any improvements and modifications and U.S. Patent Application Serial No. 62/333,609 to CNX;

E. The Court order WCT to transfer possession of all documents, prototypes, and any other instruments that embody the CNX Technology to CNX.

F. The Court preliminarily and permanently enjoin WCT, its officers, agents, servants, employees, investors, shareholders and attorneys from using, disclosing, or

misappropriating the CNX Technology, any improvements or modifications to the CNX Technology and CNX's Trade Secrets;

G. The Court preliminarily and permanently enjoin WCT, its officers, agents, servants, employees, investors, shareholders and attorneys from infringing the '111 Patent;

H. The Court declare this to be an exceptional case;

I. The Court award to CNX actual and treble damages under the Patent Act and other applicable laws;

J. The Court award to CNX punitive or exemplary damages on the basis of WCT's willful, malicious and intentional conduct;

K. The Court award CNX costs and disbursements;

L. The Court award CNX its reasonable attorneys' fees; and,

M. The Court grant such further and additional relief as this Court may deem just and proper.

Respectfully submitted,

Dated: June 8, 2016

*s/ John C. Thomas*
John C. Thomas III
PA I.D. No. 85532
jthomas@beckthomas.com
Richard T. Ting
PA I.D. No. 200438
rting@beckthomas.com
Regina Petruzzi Neumann
PA I.D. No. 85567
rpneumann@beckthomas.com
Beck & Thomas, P.C.
1575 McFarland Road
Pittsburgh, PA 15216
Phone:  (412) 343-9700
Fax:  (412) 343-5787
*Attorneys for CNX GAS COMPANY LLC*